

**MIKE HUFF & ASSOCIATES**
PRIVATE INVESTIGATIONS
SECURITY/PROTECTION CONSULTANTS

## VICTIM

**Bridges, Shane**  W/M  33
███-1980
5'10  143  Blk/Bro
Self-employed tree trimmer
13605 S. 4250 Road
Mayes County, Oklahoma
Oklahoma DOC# 385514

**Shane Allen Bridges**
**January 24, 1980 - January 1, 2014**



Funeral services for Shane Bridges, 33 of Chelsea formerly of Chouteau, will be held on Monday, January 6, 2014 at 2:00 PM at First Baptist Church in Chouteau. Rev. Lorne Beck will officiate with burial following at Chouteau West Cemetery.
Visitation will be held on Sunday from 2-4 PM. Services are under the direction of Key Funeral Home in Pryor.
Shane Allen Bridges was born on January 24, 1980 in Claremore to Jerry Gene and Betty Ann (Wathen) Bridges. He passed away on January 1, 2014 at his home in Chelsea.

Shane grew up and attended school in Chouteau. He attended Thunderbird Youth Academy in Pryor in 1996 then went on to get job training with Job Corp. Shane was one of the hardest workers you would ever meet. He began working at the age of 17 and spent time learning welding, roofing and tree trimming and maintenance. He currently owned and operated Shane's Tree Trimming. He loved working and meeting new people. He never met a stranger and was known as a happy go lucky, bigger than life personality who loved life, his family and friends. He had a smile on his face most of the time and had a contagious laugh.

Shane was married in 2003 and from this marriage came two children, B███ and A███.
He and Janelle Crook were married on June 5, 2013 and they have a two month old baby boy, S███ Jr., together. He was also step dad to A███, J███ and J███. He loved spending time with his kids, taking them hunting and fishing and just playing outdoors with them. He was a great husband, dad and provider for his family.

Shane enjoyed hunting, fishing and woodworking. He was also very artistic and loved to draw and work with modeling clay. He was a past member of First Baptist Church in Chouteau, where he was baptized as a kid.

Those who knew Shane, knew he was a wonderful friend. He loved helping others when he got the opportunity, whether it was a friend or a total stranger. He will be deeply missed by his family and friends.

PO Box 906  Owasso, Ok 74055        918.527.8075        huff@tulsadetective.com

EXHIBIT 3

Mike Huff

He is survived by his wife Janelle of the home; three children, B███ B██████, A██ B██████ and S█████ B██████ Jr. all of the home and 3 step kids, A████ C████, J████ H████ and J██████ S██████; his mother Betty Ann Bridges-Jenkins and husband Danny of Locust Grove and father Jerry Gene Bridges and wife Latricia of Tulsa; five brothers, Jerry Bridges of Tulsa, James Bridges and wife Mindy of Chouteau, Mark Bridges and wife Kristen of Ft. Gibson, Danny Jenkins of Locust Grove and Kaynen Bridges of Locust Grove; two nieces Miranda and Remington and two nephews Champ and Hunter. He was preceded in death by all of his grandparents.

## VICTIM BACKGROUND

The majority of victim's legal issues occurred between 1999 and 2004.  Subject arrested in 1999 for 3 Degree Arson, First Degree Burglary and Auto Theft.  He plead guilty and was  incarcerated for approximately 7 months on the Arson charge and on probation until 2006 for Auto Theft.  (Mayes County CF 99-0196).

He had a history minor charges to include of assault and battery, malicious injury to property, petit larceny, KCSP, possession of controlled drug and paraphernalia, possession of marijuana, DUI and minor traffic.

Last non-traffic charges occurred in 2006.  No significant charge or jail time since that time frame.

## METHOD OF DEATH

Victim died as a result of gunshot wounds received from Mayes County Deputy Sheriff.

Victim received two gunshot wounds in the right shoulder area. .There were no exit wounds.

## INCIDENT

Mayes County SO was dispatched to the remote rural location of Bridges residence on January 1, 2014.  The caller was the sister of Shane Bridges wife (Janelle).    Call was a result of a phone call in which the sister made threats to come get her 2 year old child.  The child was voluntarily given custodial rights to Janelle and Shane in Mayes County.

Page 2

Mike Huff

The sister (mother of the child has a substance abuse problem) made a call complaining of an armed suicidal subject at the location (Shane) which was untrue and not known to anyone at the Bridges residence that call had been made.  There was no reason to believe that law enforcement was enroute to the residence.

## DEPUTY INVOLVED/CHAIN OF COMMAND

**Deputy Wilson**
Mayes County Sheriff Office
Sheriff is Mike Reed

## WEAPONS INVOLVED

Weapon recovered inside residence was a .38/.357 revolver.  No other information

Deputy fired a .45 caliber semi-auto handgun.  No other information. Possible weapon could include a Glock 21 which is a .45 caliber with a 13 round capacity.

## LOCATION

13605 S. 4250 Road
Mayes County, Oklahoma

Home on an acreage off of dead end road.  Home sits 744' south of 4250 Road. Home cannot be seen from entry to dirt/gravel driveway off of 4250 Road.

## RESIDENCE OCCUPANTS

**Shane Bridges**  Husband of Janelle.  DECEASED

**Janelle Bridges** Wife of Shane. Located in front bedroom at time of incident.

**B▮▮▮ B▮▮▮** 9 year old son of victim.  Located in living room on sectional sofa near front door.

**A▮▮▮ C▮▮** 6 year old son of Janelle.  Located in back bedroom on south side.

Page 3

J████ S████.  2 year old son of Janelle. Located in back bedroom w/ Aaron.

J███ H████.  2 year old daughter of Janelle's sister.  Custody of Janelle and Shane due to substance abuse by her mother.  Located in the middle bedroom.

S███ B████ Jr.  2 mos old infant of Shane and Janelle.  Being breastfed in front bedroom with Janelle.

**GENERAL DESCRIPTION**

Rural environment with nearest occupied dwellings within ¼ to ½ mile away.  The nearest occupied residence cannot be seen from victim's home.

**SCENE DESCRIPTION**

Single story single family residence.  Three bedrooms and one bathroom.  Wood frame construction with shingled roof.  House sits on a crawl space.  Entry door faces north and opens inward hinged on west.  Door is entered off of a concrete attached front porch measuring 66 1/2" wide (east to west) by 49" (north to south). Two steps to porch measure 12" X 64" and is 6" high.  Second step is 14" X 64" and is 7" high. Main porch is 8 ½ " up from second step.  A concrete walkway leads from the porch area to the northwest towards the area of the driveway.

To the east of concrete porch is a wooden deck which has a stack of firewood approximately 4' high.  This deck measures 180" from west (porch) to east (corner of house).  Wood stack covers a double sliding glass door into the living room which is covered with a floor length curtain.  The door is blocked on the interior by a sectional couch and cannot be used for ingress/egress.

There are two windows on the north side of the residence to the west of the front door (which is approximately midway on North wall of house).  The westernmost single window on north wall is the master bedroom (where Janelle was breastfeeding 2 month child, S███ Jr.).  This window was covered with curtains.  The eastern window on north wall opens into living area.  This window was covered with a curtain.

Page 4

Mike Huff

The residence is approximately 744' south of the 4250 road. The residence cannot be seen upon initial entry into the gate and vice versa. The dirt/gravel driveway curves and crests a slight hill approximately halfway at which time the residence becomes visible.

The overall length across front of house is  43' 3'' East to West.

**LIGHTING CONDITIONS**

No artificial light along 4250 Road. Furthermore, there is no mercury-vapor light on the victim's property. There is a wall-mounted porch light which according to Janelle Bridges was not on at the time of occurrence.

The only lighting according to Janelle Bridges that was on were lights from an artificial Christmas tree in a back living area of house which may illuminated in rooms forward of the tree.

**ADDITIONAL  RESPONDING  LAW  ENFORCEMENT**

**Mayes County SO** deputies. Names unknown at this time.

**Adair Police Department**. Names unknown at this time.

**FIRST RESPONDERS**

**Dale Cowan** (neighbor and EMR for Diamondhead Volunteer Fire Department) arrived prior to any ambulance service. His first observations were that the victim was DOA upon the arrival of Cowan. He observed blood under his right armpit area. No blood or evidence was observed on the porch. Cowan advised that he received training in Crime Scene Protection, and he did not recognize any evidence of blood spatter or shell casings on the front porch. He advised that there was not any indication that Shane Bridges was outside on the front porch. He did observe the shots fired through the front door.

He later helped Janelle replace the front door.  A small amount of blood was near the wood burning stove which is on the east wall. He did not see any gun near Shane. He did observe three spent shell casings on floor near Shane.

Page 5

Mike Huff

He did hear the shots on the night of occurrence at approximately 0130 hours. He heard what he described as 4-5 shots on the night of occurrence in rapid succession. As an EMR he received a page approximately a few minutes later reference a gunshot victim.

He noticed the shots were scattered across the front of the house. He offered his opinion that it "looked like someone (deputy) panicked" with the shots across the front of house. He observed the SUV of Janelle was pointing out towards the road. When Dale first arrived Janelle was in a physical altercation with a deputy and they took her to the ground and handcuffed her and put her in a police car. Janelle was un-handcuffed. Janelle and children went to "Grandpas" up the hill. A female DHS worker arrived at the scene. She arrived between 0230 and 0300.

He overheard comments about the incident. Original call was a concerned neighbor called in that Shane was suicidal. He has since heard that Janelle's sister was the caller. What he was lead to believe that night that the SO showed up because Shane was suicidal. He just heard hearsay while at the scene. Within 20-25 seconds of deputy going 10-97 (arrival at scene) the deputy came back on saying "shots fired". He overheard this from the officers and deputies at the scene. He could not recall exactly who was saying that. Talk amongst the officers was that Shane came out firing his gun.

## AMBULANCE SERVICE

MESTA Ambulance Service from Adair responded. Jason and Jodie were the ambulance attendants. He does not recall the last names of the two.

Ambulance #94 staged at Adair Fire Department. They arrived approximately 10 minutes after notification.

Page 6

Mike Huff

## OSBI RESPONSE/INVESTIGATIVE RESPONSE

**Agent Tami Ferrari OSBI**

OSBI requested and responded the next morning to the scene. Their investigative response is unknown to this investigator. Janelle Bridges advised that a search warrant was left at the scene from OSBI.

The OSBI presented a 4-5 page summary report to **District Attorney Janice Steidley**. The DA only had these reports to make a decision from.

The DA ruled the shooting was justified. There were no diagrams, specific statements, pictures, crime scene investigation or other detailed documents presented to the DA.

## MEDICAL EXAMINER

Medical Examiner notified by Tami Ferrari OSBI at 0828 hours 1-1-14.

Forensic Pathologist Dr. Andrea Wiens conducted autopsy and determined cause and manner of death. Homicide due to two penetrating gunshot wounds was cause and manner. Victim received two gunshot wounds to his right arm and shoulder area. There were no exit wounds. She recovered two projectiles from victim.

Victim had 3 live bullet rounds from his front pant pocket.

Toxicology results did not indicate the presence of any type of controlled substance in the victim.

## FUNERAL SERVICE

Key Funeral Home in Pryor, Oklahoma

## 911 CALLER/DISPATCH-OFFICER RECORDINGS

Sister of Janelle Bridges, Jennifer Crook made a bogus call to Mayes County dispatch indicating that there was a suicidal subject (Shane Bridges) at the Bridges residence in rural Mayes County.

Page 7

Mike Huff

It was noted by Dale Cowan that he heard that the deputy arrived (went 10-97) and was back on the police radio requesting help within 20 seconds. This is a very quick time frame.

**911  CALLER  BACKGROUND and PREVIOUS CALL**

**Jennifer Crook** w/f 30
Lives with grandmother near Pensacola
441550 Hwy 28
Vinita, Okla  74301

Jennifer Crook has a background of substance abuse.  She is described as a drug addict of marijuana, meth and pills.  Her father took her in.  She cannot pass drug test.   She has a two year old child whom Shane and Janelle agreed to voluntary take custody of (through proper channels).  This child was in the residence at the time of the shooting.

On 1-1-14 0028 hours Jennifer called Shane Bridges phone and wanted them to bring her daughter to a bonfire at her grandmothers.  Shane declined advising that the children were asleep and it was cold. She became upset with Shane and stated that her and her "old man" were coming to get her child (who she voluntarily gave up custody).  This alarmed and concerned Shane and Janelle.

**CHRONOLOGY/TIME LINE  INCIDENT**

**01-14-01**

**0000-0005**  Bridges and his wife went outside and fired celebration shots for New Years.  A .410 shotgun was fired by Janelle and A████.  Several shots were fired by Shane with the  .38/.357.  After celebration shots he may have reloaded.

**0028**   Shane receives an argumentative and alarming phone call from Jennifer Crook in regards to her child whom she gave up custody to Bridges and his wife (her sister).   She was believed to be under the influence of narcotics at this time.  She stated that she and her "old man" would be coming to the Bridges house.  Shane and Janelle considered this threatening.

Page 8

Mike Huff

Shane Bridges was in the living room (according to Janelle) tending to the fire and tending to his son who was in the process of going to sleep on the couch in the living room. Janelle described Shane as doing "Dad stuff".

**0130** (prior to a few minutes)   Mayes County SO dispatch received a 911 call of a suicidal subject with a gun. Deputy dispatched to that location. Shane and Janelle were unaware of the call about their residence. Shane was not suicidal. Janelle became alarmed when she noticed headlights coming up their driveway which does not occur at that time of night.

**0130** Deputy arrives at location. Dale Cowan advised that he heard 4-5 shots. He questioned why people would still be celebrating as he looked at his bedside clock. Cowan did not hear any sirens or notice emergency lights prior to the shots. The deputy had to pass right in front of Cowan's house enroute to the call. There is only one way into the location on a dead end road, which Cowan lives upon   Cowan is an emergency responder with a professional interest in emergency situations with lights and sirens. After he heard the shots and alerted several minutes later he observed a car respond that had lights only, no siren.

**0136** Cowan receives a first responder notification of gunshot victim at the nearby residence. Cowan proceeds directly to the scene.

**0141** Cowan arrives at the scene.

**0150** Ambulance arrives at the scene (approximate).

**0828** Agent Tami Ferrari OSBI notifies Tulsa Medical Examiner office of the death.

<u>SCENE INVESTIGATION</u>

The residence siding is wood with vinyl covering. The entry door is metal with foam insulation. Interior walls are sheetrock. Wooden cabinets and shelving in adjacent dining room where shots traveled following exterior to interior trajectory.

**The number of bullet strikes does not reflect the chronological order of shots that were discharged. This is a method of identification and referencing only.**

Page 9

Mike Huff

Bullet strikes 1-3 are in the SUV of Janelle Bridges. This vehicle was parked NB in an area approximately 30' northwest of front door of residence. Strikes 4-13 strike the residence in an inbound trajectory path. All rounds (vehicle and residence) are on inbound trajectory paths. No documented bullet strikes were discovered outbound from the residence.

**Bullet Strike #1** Drivers side rear section of metal that is adjacent to rear window of the vehicle. This round was not present at time of our investigation. It may have flattened out on the metal and possibly recovered by OSBI.

This round was traveling west to east trajectory. This round could only have come from the deputy.

**Bullet Strike #2** Drivers side headrest of 3rd row rear seat. The round was cut from the foam of the headrest. This strike was immediately east of the location of strike #1 and appeared to be west to east trajectory. This round could only have come from the deputy.

**Bullet Strike #3** Was located on the rear passenger side of plastic side panel. This was above the level of the 3rd row seating headrests and seat. There was not an exit. The projectile was not located or recovered by us. Unknown if the OSBI discovered it or recovered projectile. This strike also appeared to be west to east trajectory. This round could only have come from the deputy.

**Bullet Strike #4** This strike was on the front exterior (north) wall of the residence. This was to the east of the front entry door. It is the 2nd to the highest from ground and furthest east. Trajectory is west to east and inbound. This round could only have come from the deputy.

**Bullet Strike #5** This strike was also on the front exterior (north) wall of residence. This was to the east of the front entry door. It is the lowest to the ground and in the middle of the grouping on the east side of door. This was a west to east trajectory in an inbound trajectory. This round could only have come from the deputy.

Page 10

Mike Huff

**Bullet Strike #6**  On the entry door even with 7.   Strike 6 is 6 inches  to the east of strike 7 and even in height.  These rounds would reflect an upper body strike area. This round has an west to east trajectory in an inbound trajectory. This round could only have come from the deputy.

**Bullet Strike #7**   On the entry door even with 6.   Strike 7 is 6 inches  to the west of strike 6 and even in height.  These rounds would reflect an upper body strike area.   This round has an west to east trajectory in an inbound trajectory. This round could only have come from the deputy.

**Bullet Strike #8**   This strike is on the entry door below strikes 6 and 7.  It is the westernmost bullet strike on front entry door.  This round has a west to east trajectory and is inbound.  This round could only have come from the deputy.

**Bullet Strike #9**   This strike is on the front entry door. This strike is the lowest strike on the front door and is directly below strike 6 and 7. This round has a west to east trajectory in an inbound trajectory. This round could only have come from the deputy.

**Bullet Strike #10**   Strike 10 is middle strike to the west of the entry door and is closest to the door along the north exterior wall.  This strike is slightly lower than bullet strikes 6 and 7 which struck entry door to the east.  This round has a west to east trajectory in an inbound trajectory. This round could only have come from the deputy.

**Bullet Strike #11**   Strike 11 is to the west of the entry door along the north exterior wall.  This strike is the highest of the of the strikes to the west of the entry door.  This is above strike 10.  This round has a west to east trajectory in an inbound trajectory. This round could only have come from the deputy.

**Bullet Strike #12**   Strike 12 is to the west of the entry door along north exterior wall.  This strike is approximately the same height of strike 8. This strike is the furthest to the west.  This round has a west to east trajectory in an inbound trajectory. This round could only have come from the deputy.

Bridges RPD 90

Mike Huff

**Bullet Strike #13** This strike was on the front exterior (north) wall of the residence.  This was to the east of the front entry door.  It is the highest from ground and furthest west of those rounds east of the entry door.  The round was discovered after initial numbering of bullet strikes.  Trajectory is west to east and inbound.  This round could only have come from the deputy.

### Interior Residence Bullet Paths/Trajectory

The strikes or holes showing the trajectory outside to inside of the house.  As noted, these trajectory paths were documented by number on the exterior north wall.  Several of these rounds travelled from outside/in and created holes on the north living room wall and interior surface of the entry door of the residence.  The same numbers identifying the exterior bullet strikes.  Corresponding numbers will be used on the interior north wall and door will also include the number and the letter "A" indicating the first surface it penetrated on the interior of the living room.

**Bullet Strike 12A**  Living room wall to the west of entry door.  This has a west to east trajectory inbound.  This projectile would have to be fired by the deputy.

**Bullet Strike 11A**  Living room wall to the west of entry door.  This has a west to east trajectory inbound.  This projectile would have to be fired by the deputy.

**Bullet Strike 10A**  Living room wall to the west of entry door.  This has a west to east trajectory inbound.  This projectile would have to be fired by the deputy.

**Bullet Strike 9A**  Interior side of entry door.  This has a west to east trajectory inbound.  This projectile would have to be fired by the deputy.

**Bullet Strike 8A**   Interior side of entry door.  This has a west to east trajectory inbound.  This projectile would have to be fired by the deputy.

**Bullet Strike 7A**  Interior side of entry door.  This has a west to east trajectory inbound.  This projectile would have to be fired by the deputy.

**Bullet Strike 6A**  Interior side of entry door.  This has a west to east trajectory inbound.  This projectile would have to be fired by the deputy.

Page 12

Mike Huff

**Secondary Interior Surface Strikes/Trajectory Paths**

Numbering of bullet strikes does not necessarily reflect corresponding numbers of trajectory paths through the interior of the residence.   Numerous bullet strikes were present.   Investigators did not have the benefit of viewing the strikes at the time of the initial scene investigation.   **There is no dispute that all rounds were fired from the outside to the inside of the residence.   Obviously two of the rounds struck  Shane Bridges in the upper torso.**

**Bullet Strike 6B**  Bullet strikes **6B, 5B, 7B, 8B and 9D** all struck the eastern wall of the dining area. Baby high chair located in the dining room. As well as **12B** which struck across the top of the table west to east skidmark.  West to east trajectory inbound.  These rounds would have to be fired by the deputy.

**Bullet Strike 5B**  see above

**Bullet Strike 7B**  see above

**Bullet Strike 8B**  see above

**Bullet Strike 9B**   Struck interior seatback of baby high chair West to east trajectory inbound.  Would have to be fired from deputy.

**Bullet Strike 9C**   Traveled through to the exterior seatback of baby high chair.  West to east trajectory inbound.  Would have to be fired from deputy.

**Bullet Strike 9D**  Struck wall in path of 9B and 9C.   West to east trajectory inbound.  Would have to be fired from deputy.

**Bullet Strike 12B**  see above

**SCENE MEASUREMENTS**

Scene measurements were recorded by Mike Huff and Ed Lundy.   Scene measurements will be maintained for possible usage at a later date for crime scene diagram and/or further evidentiary analysis.

**EVIDENCE  RECOVERED**

Page 13

Mike Huff

It is unknown what was recovered in the crime scene search conducted by the OSBI.

Janelle located two jacketed projectiles.  She recovered these in the dining room area. She turned (1) projectile to Attorney Mike Barkett.  Upon our scene investigation she recovered a second jacketed projectile which was  turned to Mike Huff.

### PHOTOGRAPHY

Photography of interior and exterior of the residential scene was conducted by Ed Lundy.  Select photos will be included in report.  Entire collection of photos will be placed on disk.

### VIDEO

Video of interior and exterior of the scene (residence) and the SUV vehicle were conducted by Mike Huff.  Video will be placed on disk.

### MEDIA COVERAGE

Online media coverage was identified with at least three articles.  Each article had very limited information.

Claremore Daily Progress 1-3-14  *"Man Killed by Mayes County deputy identified"*

News9.com 1-1-14 *"OSBI Investigates Sheriff's Deputy-Involved Fatal Shooting Near Chelsea"*

### INVESTIGATION  SUMMARY

This investigator was contacted 1-29-14 by Attorney Mike Barkett of Tulsa in regards to the above fatality and conducting a preliminary investigation as to the scene and surrounding facts.

On 1-30-14 myself and Private Investigator Ed Lundy proceeded to the location at 1300 hours to survey general scene and commence investigation.  We were met

Page 14

at 1450 hours by Mr. Barkett and Janelle Bridges (widow of victim and resident of the location of scene).  They authorized us to conduct an investigation.

We commenced by surveying the scene, the late model SUV which was struck by gunfire, and in particular the number of  bullet strikes and trajectory paths that we could locate.

We noted at the residence the dirt/gravel road is accessed via an open gate at the dead end road.  There were no street lights upon approach.  The perimeter of the acreage was protected with barb wire fence.  The residence is approximately 744' south of entryway from 4250 Road.  The location is remote.

We were given general locations where the family SUV was parked at the time of the shooting and the general location of where the deputy's vehicle was parked. The SUV was parked slightly in front of the residence and to a NW location approximately 22' away from the residence front door/porch area according to Janelle Bridges.

The general location of the deputy's vehicle was approximately  30+ feet from the porch area in an WNW direction.

All projectile strikes are inbound from the deputy location according to trajectories.  The strikes across the front of the house, to  include the entry door and the strikes both east and west of the door, are 7'4" in width. The strikes indicate that the deputy did not fire in a "tight pattern" and had a lack of muzzle control.

There was no evidentiary indication that there were any outbound fire from Shane Bridges.

On 2-3-14 we returned to the scene and recovered the front door of the residence to document the bullet strikes.  We also placed orange colored dowel rods in the projectile strike holes to illustrate the trajectories of the rounds fired by the  deputy.

Page 15

Mike Huff

We had a detailed interview with Dale Cowan who provided information as to the shooting time and the immediate response after the shooting. He was notified as an Emergency Responder and arrived at the scene within minutes.

We spoke with First Asst DA Larry Edwards on 2-11-14. He advised that DA Janice Steidley and the DA office only received a summary report from OSBI. They did not receive detailed crime scene reports, evidence reports or photographs concerning the investigation. The "Justifiable" shooting ruling was made by the DA with the summary report only as the basis of the decision.

He made comments that the OSBI Agent Tami Ferrari verbally advised that shots from Shane Bridges may have struck the SUV parked in the midst of the shooting location. This is not supported by ANY evidence. The shots came from the deputy location. Further comments were made that the victim may have reloaded his revolver. This is not supported by facts. The victim fired his revolver in a celebration of New Years at approximately midnite and possibly reloaded at that time. Mr. Edwards would not indicate if the revolver was recovered fully loaded. The comments about reloading and the lack of comment about the number of live rounds in the revolver is concerning.

He advised several other inclusions of the report. He stated that it was his understanding the responding deputy approached the area with lights and sirens and turned them off prior to entering the property. The deputy would have to travel past the residence of Dale Cowan in this approach. Mr. Cowan advised that he neither heard or saw emergency lights or sirens at that time.

Edwards stated that the deputy was confronted by a dog and he searched in his vehicle for pepper spray for the dog. He then was confronted by the victim and shot at. He hollered at the victim but the subject continued to fire. The wife of Shane Bridges advised that she heard absolutely no verbal exchange. She heard gunfire that sounded like it was from a single gun. Cowan advised that he heard gunfire 4-5 shots and could not differentiate number of weapons. The shots were fired in rapid succession.

Page 16

Mike Huff

Cowan overheard law enforcement officers talking at the scene that from the time the deputy went 10-97(arrival) to the time he came back on the radio advising "Shots Fired!" that it was 20-25 seconds.  This could be confirmed by listening to radio tapes of dispatcher/deputy conversations (not 911 calls). This timeframe is not consistent with the deputy advising he went back into his vehicle to get pepper spray etc...

## SUMMATION

This is a brief synopsis of the incident and our investigation.  Crime Scene reconstructionist could scientifically analyze shot patterns, evidence locations etc. OSBI reports are protected by law.  These reports would be necessary to analyze their investigation and factual information.

The goal of this investigation is to reveal factual information concerning the incident.

## SCENE PHOTOGRAPHS



Large caliber, inward bullet depression. Into the drivers side SUV in direction of house. Inbound trajectory from deputy location.

Mike Huff



Bullet strike and projectile recovery location in drivers side rear head rest. This shows inbound trajectory from deputy location.



Bullet strike on passenger side interior wall in rear of vehicle. This round was inbound and possibly struck back glass which was shattered. Deputy could be only source for this round.

Mike Huff





Bridges RPD 98

Mike Huff





Bridges RPD 99

Mike Huff





Bridges RPD 100

Mike Huff





Bridges RPD 101

Mike Huff





Bridges RPD 102

Mike Huff





Trajectory paths prove that door had to be shut at the time of the shooting.

Page 24

Mike Huff





Bridges RPD 104

Mike Huff





Bridges RPD 105

Mike Huff





Bridges RPD 106

Mike Huff





Bridges RPD 107

Mike Huff





Bridges RPD 108

Mike Huff

Bridges RPD 109