# IN THE UNITED STATES DISTRICTCOURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) JANELLE BRIDGES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 15-CV-126-GKF-PJC |
| | ) | |
| (1) KYLE WILSON, in his individual capacity, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

---

## DEFENDANT'S MOTION AND BRIEF IN LIMINE

---

`

s/ Jordan L. Miller
Jordan L. Miller, OBA No. 30892
Stephen L. Geries, OBA No. 19101
COLLINS, ZORN & WAGNER, P.C.
429 N.E. 50th Street, 2nd Floor
Oklahoma City, OK 73105-1815
Telephone:    (405) 524-2070
Facsimile:    (405) 524-2078
Email: jlm@czwlaw.com
       slg@czwlaw.com

ATTORNEYS FOR DEFENDANT

May 29, 2019

## <u>LIST OF ATTACHMENT</u>

Ex. 1   Deposition of Wilson

Ex. 2   Notification of employment, showing Wilson's birth date as xx-xx-1975

Ex. 3   "Bridges Fatality Investigation" Report, authored by a man named Mike Huff

Ex. 4   Plaintiffs' Preliminary Witness and Exhibit List, submitted March 16, 2016

Ex. 5   Request for Analysis

Ex. 6   Deposition of Janelle Bridges

Ex. 7   Deposition of Dale Cowan

Ex. 8   News Articles

Ex. 9   DA Letter Declining Charges

# TABLE OF AUTHORITIES

*Palmieri v. Defaria*, 88 F.3d 136, 141…………...………………………………………………1

*Banque Hypothecaire Du Conton DeGeneve v. Union Mines, Inc.*, 652 F.Supp. 1400, 1402……..1

*Pivot Point Interne, Inc. v. Charline Products, Inc.*, 932 F.Supp. 220, 222………………………...1

*Orjias v. Stevenson*, 31 F.3d 995, 1000………………………………………………………..2

*U.S. v. Robinson*, 978 F.2d 1554, 1559…………………………………………………....2

*United States v. Ayers*, 702 F.2d 1145, 1149………………………………………………..8

*Ivy v. Sec. Barge Lines, Inc.*, 585 F.2d 732, 541……………………………………………11

*Lovett ex ref. Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083………………………………...11

*Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246…………………………………11

*Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 179……………………………………11

*Whitehead v. Food Max of Miss. Inc.*, 163 F.3d 265, 278…………………………………………11

*Kinan v. City of Brockton*, 876 F.2d 1029, 1034-35……………………………………………14

*Ward v. City of San Jose*, 967 F.2d 280, 286……………………………………………………14

*Burns v. Bd. of C'nty Comm'rs of Jackson C'nty*, 330 F.3d 1275, 1282…………………………..16

**Rules**

Federal Rules of Evid. 401-404…..…………........................2, 3, 5, 8, 9, 11, 12, 13, 14, 15, 17, 18

Rule 609(b)………………………………………………………………………………2, 3

Rule 403………………………………………………………………………………3, 5, 8, 9

Fed. R. Evid. 701…………………………………………………………………7, 8, 9, 10

Fed. R. Evid. 702………………………………………………………………………..7, 9, 17

Fed. R. Civ. P. 26(a)……………………………………………………………………...7

Fed. R. Evid. 602………………………………………………………………………..8, 10

Fed. R. Evid. 801-802………………………………………………………………...10, 15, 17

Fed. R. Evid. 805………………………………………………………………………10, 15

Fed. R. Evid. 411……………………………………………………………………………14

Fed. R. Evid. 613……………………………………………………………………………17

**Statues**

42 U.S.C. § 1983…………………………………………………………………..7, 13

## IN THE UNITED STATES DISTRICTCOURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) JANELLE BRIDGES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 15-CV-126-GKF-PJC |
| | ) | |
| (1) KYLE WILSON, in his individual capacity, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION AND BRIEF IN LIMINE

Defendant Kyle Wilson respectfully re-urges all the Motions in Limine filed on October 14, 2016 [Dkt. 70], and again on February 13, 2018 (Dkt. 205), with some slight additions below, and moves this Court for an Order in Limine excluding and/or preventing the Plaintiffs' attorneys, and Plaintiffs' witnesses from mentioning, presenting evidence, or soliciting testimony on the topics and evidentiary matters as set forth below. While this Court had ruled on some of these Motions for the purposes of ruling on summary judgment, the Court expressly noted that the Motions in Limine had not been ruled on for the purposes of trial. [Dkt. 160].  A conference was held on the Motions in Limine on May 28, 2019, and Plaintiffs' counsel indicated he now objects to all of the Motions in Limine listed below.

## MOTION IN LIMINE STANDARD

The purpose of a motion in limine is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Conton DeGeneve v. Union Mines, Inc.*, 652 F.Supp. 1400, 1402 (D.Md. 1987). In addition to saving trial time, pretrial rulings on evidence frequently save the parties time, effort, and cost in preparing and presenting their cases. *Pivot Point*

*Interne, Inc. v. Charline Products, Inc.*, 932 F.Supp. 220, 222 (N.D.Ill. 1996). With this standard in mind, Defendant asks the Court to exclude the following evidence.

## ARGUMENT AND AUTHORITY

1.      **Any Testimony, Arguments, Questions, Reference to, or Other Evidence Regarding Prior Bad Acts of Defendant Kyle Wilson and other Mayes County Personnel Should Be Excluded**

During Defendant Wilson's deposition, Plaintiffs' counsel questioned Defendant Wilson about his prior criminal history. Any testimony or evidence of his criminal history should be excluded under Federal Rules of Evidence 401-404. Specifically, Plaintiffs' counsel questioned Defendant Wilson about criminal charges and whether Defendant Wilson had ever been arrested. (*See* Ex. 1, Deposition of Wilson, p. 134, l. 12 - p. 135, l. 20). This testimony should also be excluded under Fed. R. Evid. 401-404, and 609. It was Defendant Wilson's understanding that the charge for Driving While Intoxicated ("DWI") was dismissed. Plaintiffs have not produced any evidence of conviction in that matter. Any reference to this criminal charge, or use of exhibits, or any argument, questioning, suggestion, testimony or innuendo regarding that charge should be excluded from evidence as being confusing, misleading, and unfairly prejudicial to the jury. (*See* Fed. R. Evid. 403). Furthermore, the DWI charge occurred when Wilson was a young man, well over ten years ago. (*See* Ex. 1, Deposition of Wilson, p. 134, ln. 21 - ln. 24; Ex. 2, Notification of employment, showing Wilson's birth date as xx-xx-1975). In addition to being irrelevant to the matters at issue in the current case and excluded under Fed. R. Evid. 401-403, Plaintiffs are barred from introducing any conviction under Rule 609(b), which prohibits using evidence of a conviction after ten (10) years.

Additionally, evidence of crimes, wrongs, or other acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance

with that character." (Fed. R. Evid. 404(b)). The undersigned believes that Plaintiffs' counsel may try to use evidence of Defendant Wilson's Driving While Intoxicated charge, or some other unknown wrongs or acts to attempt persuade the jury that he had a propensity for acting unlawfully or using force. However, they have no probative value in this case.

Any such character evidence is expressly prohibited by Fed. R. Evid. 404(b), in addition to being irrelevant and unfairly prejudicial. To determine whether evidence is admissible under Fed. R. Evid. 404(b), the court must analyze the following four factors:

> (1)  the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*Orjias v. Stevenson*, 31 F.3d 995, 1000 (10th Cir. 1994). The proponent of the evidence should articulate "precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts." *U.S. v. Robinson*, 978 F.2d 1554, 1559 (10th Cir.1992). "Finally, there must be a clear and logical connection between the alleged earlier offense or misconduct and the case being tried." *Id.* The rationale behind all of these protections to the admissibility of prior acts is that "evidence of [bad acts] requires a defendant to defend against past actions and tends to show that the defendant is 'generally bad'." *Id.* Here, there is no indication that Defendant Wilson was ever convicted of alleged bad acts related or relevant to the case at bar. Any evidence pertaining to Wilson's 1990's DWI charge or to any other criminal or wrongful act attributed to Defendant Wilson therefore violates Rules 401-404 and 609 of the Federal Rules of Evidence, and Plaintiffs should not be permitted to introduce it at trial.

**2.      Any Witnesses, Testimony, Reports, Arguments, Questions, Reference to, or Other Evidence Regarding Plaintiffs' Private Investigator's Investigation into the Shooting of Shane Bridges Should Be Excluded**

In Plaintiffs' Responses to former Defendant Reed's Requests for Production of Documents, Plaintiffs' produced a "Bridges Fatality Investigation" Report, authored by a man named Mike Huff. This Report is attached hereto as Ex. 3. This report is hearsay itself, and it is full of hearsay and hearsay within hearsay.   It should be excluded under Fed. R. Evid. 801-802, and 805.

Further, it seeks to set forth opinions and conclusions that require technical, scientific, or other specialized knowledge. For example, the trajectory of projectiles inside the Bridges' residence is a topic of testimony that would require specific expertise beyond that of a layperson. Mike Huff is not listed as an expert witness by Plaintiffs, nor is he even listed as a lay witness in this case. (See Ex. 4, Plaintiffs' Preliminary Witness and Exhibit List, submitted March 16, 2016). Moreover, the report does not satisfy the requirement in Fed. R. 26(a)(2)(B) that the report be signed by the witness. Furthermore, it does not satisfy the requirements in Fed. R. Civ. P. 26(a)(2)(B)(iv)-(v) that the report contain the witness's qualifications, or a list of all other cases in which, during the previous four years, the witness testified as an expert. For all these reasons, this Court has already granted this Motion in Limine for the purposes of summary judgment, and there is no reason that this testimony should thereafter be admitted at trial. [Dkt. 160]. Thus, any discussion, reference, testimony, and the admission of the report and any of Huff's investigation should be excluded to pursuant to Fed. R. Evid. 701-705; 801-802; 805.

3. **Any Testimony, Arguments, Questions, Reference to, or Other Evidence Regarding Medical Examiner's Notes Should Be Excluded**

Pursuant to the Court's Order permitting release of the medical examiner's file, Plaintiffs obtained a copy of the medical examiner's file.  In the medical examiner's file, the medical examiner's notes on the Request for Analysis state, among other things: "MAYES COUNTY

4

INFORMED OSBI THAT THE DECEDENT HAD MADE SUICIDAL THREATS IN THE PAST AND THEY HAD RESPONDED TO THE RESIDENCE MULTIPLE TIMES.  THERE WAS NO NOTE FOUND." (Ex. 5, Request for Analysis). The medical examiner's file should be excluded.

First, the report itself is hearsay and must be excluded.  Fed. R. Evid. 801-802. Moreover, it also contains hearsay within hearsay. The medical examiner's recitation of someone at Mayes County's supposed statement is another layer of hearsay, which also must be excluded. Fed. R. Evid. 801-802; 805. Moreover, buried within the medical examiner's recitation is yet one more layer of hearsay, as presumably the writer of the medical examiner's report must have been told by *someone* that Mayes County had told the OSBI about someone at Mayes County's supposed statement. This is yet another layer of hearsay, which also must be excluded. Fed. R. Evid. 801-802; 805.

Further, admission of the above statement would be unfairly prejudicial because there has been no testimony or evidence from Mayes County, from the OSBI, or from anyone else, that anyone associated with Mayes County did in fact make any such statement to the OSBI. Plaintiff apparently seeks to use this Medical Examiner's Statement as part of a claim that there is some sort of grand conspiracy in this case, but there is no evidence in support of this statement ever in fact being made at all. As such, at trial, any reference to statements in the medical examiner's file, or any testimony, questioning, arguing, or innuendo related to those statements, should be excluded under Federal Rules of Evidence 401-403 as being irrelevant, confusing to the jury, and unfairly prejudicial.

**4.     Any Testimony, Arguments, Questions, Reference to, or Other Evidence Regarding Prior Uses of Non-Deadly Force of Defendant Kyle Wilson and other Mayes County Personnel Should Be Excluded**

During Defendant Wilson's deposition, Plaintiffs' Counsel asked Defendant Wilson several questions regarding Defendant Wilson's uses of force and the number of times that he unholstered his service pistol. Evidence regarding such topics should be excluded as irrelevant, confusing to the jury, misleading, a waste of time, and unfairly prejudicial. Specifically, Plaintiffs' counsel asked Defendant Wilson to estimate the number of times, during his entire law enforcement career, he has used force in the line of duty, including the use of a Taser. (Ex. 1, Deposition of Wilson, p. 87, l. 15 - p. 89, l. 16). Plaintiffs' counsel also asked several questions regarding the number of times that Defendant Wilson has "brandished" his service weapon in the line of duty. (Ex. 1, Deposition of Wilson, p. 89, l. 17 - p. 92, l. 6). Even though Defendant Wilson testified that he has in fact never used a Taser in the line of duty (Ex. 1, Deposition of Wilson, p. 87, l. 15 - p. 89, l. 16), and that the "brandishing" of a weapon is absolutely necessary for such law enforcement activities as "felony stops, building searches, sweeps of buildings, [and] serving search warrants" (Ex. 1, Deposition of Wilson, p. 91, ln. 8 - p. 92, l. 6), Plaintiff may try to paint a completely unfair, unsupported picture of Defendant Wilson as an out-of-control Deputy. Again, this information is irrelevant, confusing to the jury, misleading, a waste of time, and unfairly prejudicial, and should be barred from admission pursuant to Fed. R. Evid. 401-403.

**5.      Any Testimony, Arguments, Questions, Reference to, or Other Evidence Regarding Complaints of Deputy Misconduct of Defendant Kyle Wilson and other Mayes County Personnel Should Be Excluded**

During Defendant Wilson's deposition, Plaintiffs' counsel asked Deputy Wilson about complaints of misconduct that had been asserted about him. (Ex. 1, Deposition of Wilson, p. 92, l. 7 - p. 93, l. 13). Deputy Wilson testified to only one complaint which arose from a situation in which a person's children were taken from him by the Department of Human Services. The complaint was unfounded and there is no evidence that Defendant Wilson was disciplined in any

way. This is an excessive force case brought pursuant to 42 U.S.C. § 1983 and Oklahoma law. One unfounded complaint from years ago, which has nothing to do with excessive force, is not relevant, and has no bearing on Plaintiffs' claims in this lawsuit. Thus, Plaintiffs' counsel should not be permitted to elicit testimony regarding complaints of law enforcement misconduct that is irrelevant, and would only serve to confuse and mislead the jury, waste time, and would be unfairly prejudicial to Defendant. Thus, admission of such evidence should be barred pursuant to Fed. R. Evid. 401-403.

6.   **Any Testimony, Arguments, Questions, Reference to, or Other Evidence Regarding Plaintiff Janelle Bridges' Opinions Regarding Ballistics and Gunshot Acoustics should be barred.**

In Plaintiff Janelle Bridges' deposition, she testified that she only heard gunshots from one direction, and states that her husband, decedent Shane Bridges, therefore did not shoot at Deputy Wilson. (Ex. 6, Deposition of Janelle Bridges, p. 109, l. 25 - p. 110, l. 2, p. 186, l. 2-6). Plaintiff Janelle Bridges and Plaintiffs' counsel should be prohibited from testifying, questioning, or arguing that Plaintiff Janelle Bridges could identify the directions of gunfire on the night in question. Plaintiff Janelle Bridges is not an expert in gunfire recognition and does not have any specialized training on the subject. (Ex. 6, Deposition of Janelle Bridges, p. 110, l. 3 - 4).

Gunfire recognition or acoustics would require specialized technical or scientific skills, and any such testimony is inadmissible expert witness testimony. Lay witnesses may only testify to their opinions if their testimony is not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. (See Fed. R. Evid. 701). Rule 702 allows expert testimony if an expert witness' scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. (See Fed. R. Evid. 702). Parties are required to disclose the identities of any expert witnesses they intend to use at trial. (See Fed. R. Civ. P. 26(a) (2)(A)).

7

Clearly, Janelle Bridges was not named as an expert witness, nor could she be named as one, as she has no specialized training on this subject. Because Janelle is clearly not an expert on gunfire recognition, and was not named as an expert witness, she should not be permitted to testify that she could identify the direction of gunfire on the night of the incident in question. (See Fed. R. Evid. 701-703).

Further, Janelle did not see any interactions between Defendant Wilson and Shane Bridges, nor did she see any muzzle flashes, and was in fact not an eyewitness to the encounter between Defendant Wilson and Shane Bridges.  (Ex. 6, Deposition of Janelle Bridges, p. 108, ln. 11-17, p. 111, l. 23-24, p. 186, l. 16-18). Thus, Janelle's testimony that Shane Bridges did not shoot at Defendant Wilson is based on pure speculation, and not on firsthand knowledge, which is required by Fed. R. Evid. 602. As Plaintiffs therefore have no evidence whatsoever, beyond pure speculation from a lay witness without specialized scientific knowledge, that Shane Bridges did not shoot at Defendant Wilson, Plaintiff Janelle Bridges and Plaintiffs' counsel should be prohibited from testifying, questioning, or arguing that Shane Bridges did not shoot at Defendant Wilson on the night in question. While Defendant recognizes that this Court denied this Motion in Limine for the purposes of the Motion for Summary Judgment [Dkt. 160], Defendant respectfully requests that this Court reconsider for the purposes of trial, and bar Janelle Bridges from testifying as an expert witness in this case.

**7.    Bridges' Family Photos Should be Excluded Due to Their Irrelevance and Prejudicial Value**

In Plaintiffs' Responses to Defendant Reed's Requests for Production of Documents, Plaintiff produced several photographs taken of Shane Bridges and the Bridges' family members. "Photographic evidence is admissible only if it is relevant to the specific issues at trial." *United States v. Ayers*, 702 F.2d 1145, 1149 (D.C. Cir. 1983). Photographs of the decedent and Bridges'

family members are not relevant to the issues in this case, have no probative value, and presenting them as evidence to the jury would serve only to inflame them and incite sympathies for the Bridges family. Those photographs should therefore be excluded under Fed. R. Evid. 401-403.

**8.    Any Testimony, Arguments, Questions, Reference to, or Other Evidence Regarding Dale Cowan's Opinions regarding gunshot recognition or acoustics should be barred**

During the deposition of Dale Cowan, he, like Plaintiff Janelle Bridges, testified that it "sounded" like all the shots came from one gun firing at the time of the incident giving rise to this case. (Ex. 7, Deposition of Dale Cowan, p. 64, l. 23 - p. 65, l. 7, p. 80, l. 22 - p. 81, l. 3.). However, Cowan also testified that he could not determine what kind of gun was being fired, or whether there were multiple guns being fired. (Ex. 7, Deposition of Dale Cowan, p. 21, l. 18-22). Like Plaintiff Janelle Bridges, Cowan does not have any specialized training or skills in recognizing gunfire or ballistics. (Ex. 7, Deposition of Dale Cowan, p. 12, l. 9 - p. 13, l. 1, p. 81, l. 4 -14). Again, gunfire recognition or acoustics would require specialized technical or scientific skills, and any such testimony is inadmissible expert witness testimony. Lay witnesses may only testify to their opinions if their testimony is not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. (See Fed. R. Evid. 701). Rule 702 allows expert testimony if an expert witness' scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. (See Fed. R. Evid. 702). Parties are required to disclose the identities of any expert witnesses they intend to use at trial. (See Fed. R. Civ. P. 26(a)(2)(A)). Clearly, Dale Cowan was not named as an expert witness, nor could he be named as one, as he has no specialized training on this subject.  Because Dale Cowan is also clearly not an expert on gunfire recognition, and was not named as an expert witness, he should not be permitted to testify that he could identify the number of guns that were shot on the night of the incident in question. (See Fed. R. Evid. 701-703). Such testimony would clearly require specialized training

9

and scientific or technical knowledge. Since Cowan does not have the requisite skill or knowledge, any testimony regarding the number of guns fired on the night of the incident should be barred pursuant to Fed. R. Evid. 701-703.

Also, like Plaintiff Janelle, Cowan was not an eyewitness to this incident; he did not see any muzzle flashes nor did he see or witness any interaction between Defendant Wilson and Shane Bridges. (Ex. 7, Deposition of Dale Cowan, p. 83, l. 7-13). Thus, Cowan's belief that only one gun was fired is also based on pure speculation, and not on firsthand knowledge, which is required by Fed. R. Evid. 602. For all of these reasons, Cowan should be prohibited from testifying that only one gun was fired that night. While Defendant recognizes that this Court also denied this Motion in Limine for the purposes of the Motion for Summary Judgment [Dkt. 160], Defendant respectfully requests that this Court reconsider for the purposes of trial, and bar Dale Cowan too from testifying as an expert witness in this case.

**9.    News Media Reports Should be Excluded As Hearsay**

In Plaintiffs' Responses to former Defendant Reed's Requests for Production of Documents, Plaintiffs produced news articles regarding the incident in this case, as well as others involving Mayes County officials, deputies, and personnel. (Ex. 8, News Articles). These articles are hearsay, and include hearsay within hearsay. They should be excluded as hearsay, and hearsay within hearsay, under Fed. R. Evid. 801-802, and 805, as the news articles contain statements made by witnesses outside of court that are offered to prove the truth of the matter asserted.

**10.    Golden Rule Arguments, Pleas, and Personalizing the Case Should be Excluded**

Defendant anticipates that Plaintiffs' counsel may plea to the jury to consider how they or their family members might feel if their family member died under the same circumstances. This

tactic, also called the "Golden Rule Argument," is inherently prejudicial and should be prohibited at trial pursuant to 401-403 of the Federal Rules of Evidence.

A plea to the jury members to "put themselves in the shoes of the plaintiff and do unto him as they would have done unto them under similar circumstances ... [is] improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than the evidence. *Ivy v. Sec. Barge Lines, Inc.*, 585 F.2d 732, 541 (5th Cir. 1978). Other courts have stated that a golden rule arguments "universally condemned" because of the effect it has on triers of fact. *Lovett ex ref. Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000) (quoting *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982)).

> Even if counsel does not explicitly invoke the Golden Rule but merely invites the jury to place themselves in the position of the plaintiff, the result is effectively the same and the risk of taint is no different.

*Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 179 (5th Cir. 2005) (*citing Whitehead v. Food Max of Miss. Inc.*, 163 F.3d 265, 278 (5th Cir. 1998). Defendant asks that all such arguments be barred in limine in advance of trial.

## 11.    Counsel Should Be Prohibited from Making Arguments to the Jury Regarding Other Incidences of Police Shootings, Police Brutality, or Excessive Force

Due to the political climate, as well as the heightened media interest in law enforcement excessive force claims following several recent high-profile incidents across the nation, Defendant anticipates that Plaintiffs will attempt to make arguments to the jury that incorporate references to or innuendo regarding other incidents around the nation. Defendant requests that Plaintiffs' counsel be limited to strictly making arguments relating to the facts of the case at hand, rather than evoking memories and feelings in the jury regarding other non-related cases involving excessive force or shootings by law enforcement. References to other such cases are irrelevant and prejudicial and

11

should not be used to sway the jury when hot-button issues such as race and socio-economic status are not at play in this case.   (See Fed R. Evid. 401-403).

This includes other claims or incidents of alleged excessive force, or shooting, by anyone else at the Mayes County Sheriff's Office.  As Kyle Wilson is the sole remaining Defendant in this case, any other incidents at the Mayes County Sheriff's Office are irrelevant.  There is no remaining policy, procedure, or custom prong of any claim in this lawsuit, so any actions by any officer other than Kyle Wilson himself are irrelevant, overly prejudicial, and should be excluded.  (See Fed. R. Civ. P. 401-403)

12.   **Plaintiffs' Counsel Should Be Barred From Arguing that Defendant Kyle Wilson was Protected by the Mayes County Sheriff's Office or other Agencies In a Vast Conspiracy**

It cannot be disputed in this case that the shooting was investigated by an independent agency, the OSBI, and that a decision was made not to charge Defendant Kyle Wilson by the then-District Attorney. (Ex. 9, DA Letter Declining Charges). Regardless, Defendant anticipates that Plaintiffs may attempt to argue at trial, without any evidence in support whatsoever, that Defendant Kyle Wilson was somehow protected by law enforcement officers in a vast conspiracy of agencies. Plaintiff will likely attempt to draw on national events and argue that law enforcement officers are too often protected by the system and not charged. Plaintiffs may even attempt to argue that the OSBI, Oklahoma Department of Human Services, the District Attorney, and the Mayes County Sheriff's Office all conspired to make it seem like Shane Bridges was shooting back at Defendant Wilson. Of course, for this to be true, Plaintiffs imply that Defendant Wilson murdered Shane Bridges for no reason, in cold blood, and that the entire apparatus of government is covering for him. In the absence of any evidence of any such conspiracy whatsoever, and where an independent

agency was involved in the investigation of Defendant Kyle Wilson, all such argument would be improper, confusing to the jury, and highly prejudicial. (See Fed. R. Evid. 401-403).

**13.    Dismissed Parties or Dismissed Claims.**

As of the original filing of the Motions in Limine, there were three different Defendants, each of whom had several claims brought against them. Now, claims against several former Defendants have been dismissed on summary judgment, as have some of the claims against the remaining Defendant, Defendant Wilson. Defendant Wilson requests the Court to exclude testimony or evidence of the dismissed parties or claims. Such information is irrelevant and prejudicial, as the jury might tend to give more credit to whatever claims remain, if any, if they are aware certain other claims were dismissed. (See Fed. R. Evid. 401-403). The only remaining claim in this suit is the 42 USC § 1983 claim against Defendant Wilson, and no other claims should be referenced.

**14.    Witnesses and Exhibits Not Previously Listed by Plaintiffs**

Plaintiff provided her witness and exhibit lists in this case on March 16, 2016. (See Ex. 4, Plaintiffs' Preliminary Witness and Exhibit List, submitted March 16, 2016). The discovery cutoff was July 29, 2016 (Dkt. 28), and Plaintiffs had not updated their witness or exhibit list at any time since. Adding new witnesses or exhibits at this late juncture, without their disclosure during discovery, would be contrary to the spirit of this Court's Scheduling Order, and unduly prejudicial to Defendant. Plaintiff should therefore be barred from calling any witnesses or introducing any exhibits that were not contained on the final witness and exhibit list.

**15.    Previous Lawsuits against the Mayes County Jail, the Mayes County Sheriff's Office, Any Other Mayes County Elected Official, Or Employees Thereof**

Defendant requests the Court to exclude testimony or evidence of any other lawsuits involving the Mayes County Jail, the Mayes County Sheriff's Office, any other Mayes County

elected official, or any employee thereof.   Lawsuits filed against any of these parties, before or after the incident at issue in this case, are totally irrelevant to issue in this case. The issue in this case is whether Plaintiffs' constitutional rights were violated by Defendant Wilson when he used deadly force on decedent Shane Bridges. Fed. R. Evid. 401-403. *See Kinan v. City of Brockton*, 876 F.2d 1029, 1034-35 (1st Cir. 1989) (trial court's exclusion of two other civil rights lawsuits against defendant police officer was not abuse of discretion). Anything else is irrelevant and immaterial.

### 16.   Insurance

The law does not permit any party to offer evidence of the existence of liability insurance. Although there are exceptions to this evidentiary rule, none of the exceptions apply to the circumstances at hand. Fed. R. Evid. 411. Therefore, the Court should enter an order precluding Plaintiffs, their counsel, or any witness from inferring or mentioning the existence of liability insurance or any other such coverage at any time during the trial proceedings. Of particular concern would be any inadvertent "slips" from Plaintiff Janelle Bridges and/or her counsel or any witness. Plaintiffs and her counsel should be advised to clearly and unequivocally have a clear understanding with any witness Plaintiffs call that this subject is to be avoided.

### 17.   Counsel Should Be Prohibited from Making Arguments to the Jury Regarding Punishing Defendant or Requesting Punitive Damages

Plaintiffs assert they are entitled to punitive damages against Deputy Wilson. However, in order to establish that Plaintiffs are entitled to such damages, they must show that Deputy Wilson acted with malice. See *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991)(directed verdict in police officers' favor on issue of punitive damages was proper because there was no evidence the officers acted with evil intent). Here, Plaintiffs' provide no evidence suggesting that Deputy Wilson acted with malice. (Ex. 6, Deposition of Janelle Bridges, p. 187, l. 9-17, p. 198, l. 21-23). As such,

Plaintiffs' Counsel should be prohibited from asking the jury to "send a message," punish Defendant, or otherwise ask for punitive damages against Defendant.

**18.**     **Counsel Should Be Prohibited from Making Arguments to the Jury Regarding Lack of Audio or Video Recordings of the Incident or claiming that Mayes County Personnel had dash cam video of the Incident or of the Events after the Incident.**

In this case, there is no evidence that anyone with the Mayes County Sheriff's Office had any dash cam video recordings, or audio recordings of the incident itself or of the events after the incident. However, the undersigned suspects that Plaintiffs' counsel may attempt to argue, imply, or otherwise suggest that Mayes County patrol units and/or personnel had video and audio recording devices that made recordings of the incident and/or the events after the incident on the early morning of January 1, 2014. Because there is no evidence of any dash cam video recordings, video recordings, or audio recordings of the incident itself or of the events after the incident such argument would be improper, confusing to the jury, and highly prejudicial to Defendant. (See Fed. R. Evid. 401-403).

**19.**     **Plaintiffs' "Expert" Reports Should Be Excluded.**

Plaintiffs' have listed "Reports prepared by the Plaintiffs & Defendant expert witness" as exhibits in this case. (See Ex. 4, Plaintiffs' Preliminary Witness and Exhibit List, submitted March 16, 2016). However, this Court struck Plaintiffs' expert witnesses from testifying in this case. [Dkt. 45]. As Plaintiffs' do not have any experts in this case, any reports prepared by any former or proffered expert of Plaintiffs should be excluded. The reports should also be excluded pursuant to Fed. R. Evid. 401-403, 801-802, 805.

**20.**     **Any Attempt to Impeach Diana Galloway With Her Second Secret Deposition Should be Excluded**

Plaintiffs will likely attempt to use certain deposition testimony at trial to impeach witness Diana Galloway.  Plaintiff appears to argue that it was disputed whether Janelle Bridges admitted to Diana Galloway after the shooting that Shane Bridges was shooting at Kyle Wilson. This second

deposition transcript, however, may not be used to impeach Diana Galloway. As this Court should recall, this deposition transcript is a secret deposition transcript that Plaintiffs' counsel took of Diana Galloway, without informing counsel for the Defendant. Effectively, this deposition transcript should not be considered by any Court, or by any jury, as it is essentially a sham affidavit.

Factors to consider in determining whether an affidavit is a sham include, "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Burns v. Bd. of C'nty Comm'rs of Jackson C'nty*, 330 F.3d 1275, 1282 (10th Cir. 2003). Here, Galloway was subject to cross-examination by Plaintiffs' counsel in her deposition in this case. Second, Galloway had access to the pertinent evidence, and was represented by counsel during her deposition in this case. Finally, to the extent her testimony is different in the second deposition compared to her testimony in this case, it is not based on new evidence and certainly, her prior deposition testimony reflects no confusion.

Thus, because the deposition in Plaintiffs' Supplemental Appendix is the equivalent to a sham affidavit, this second affidavit should not be allowed to impeach Diana Galloway with the second secret deposition transcript. Additionally, Plaintiff took the second deposition November 2, 2016, well after the discovery cutoff in this case. Plaintiffs' counsel simply sought to get around the discovery cutoff in this case by subjecting Galloway to another deposition in the probate case, without informing the undersigned, where Plaintiffs' counsel then apparently sought to confuse her. The parties had a LCvR. 37.1 conference on this point on November 10, 2016, and Plaintiffs' counsel repeatedly refused to provide the entire transcript, claiming that he would not do so because the deposition was taken in the probate case. Only after an Order from this Court on a Motion to Compel

did Plaintiff even agree to provide the full transcript. Moreover, it should further be noted that there is a protective order in place in the probate case, noting that all information in the DHS's records are confidential under Oklahoma law, that no person or entity shall utilize information contained within for any purpose other than the prosecution or defense of the child custody or visitation issues in this case, and that any violation of the protective order "shall be subject to prosecution for contempt of court." Nevertheless, Plaintiff will likely seek to use this deposition transcript to impeach Diana Galloway at trial. This should not be allowed. (See Fed. R. Evid. 613).

**21.      Diagrams/Theories of Bullet Direction**

In their Response to the Motion for Summary Judgment, Plaintiffs' counsel produced numerous "modified' diagrams and "illustrations" purporting to show where the shots in this case came from, and where they went. [Dkt. 96, pp. 6-11]. However these "modified" diagrams and illustrations appear to have been drafted by Plaintiffs' counsel himself. These "modified" photographs and illustrations are irrelevant, highly prejudicial, unauthenticated, misleading, speculative, hearsay, and attempt to offer an improper expert opinion. (See Fed. R. Evid. 401-403, 801-803, 702).   As has been discussed *ad nauseum* in these Motions, Plaintiff does not have an expert witness, and any attempt to improperly offer expert testimony (i.e. testimony ballistics, bullet direction, etc.) would clearly be an improper attempt to enter evidence that requires an expert's scientific, technical or other specialized knowledge.  (See Fed. R. Evid.  702). Unauthenticated, hearsay illustrations and diagrams, by which Plaintiffs' Counsel will attempt to get the jury to believe their theory of cold-blooded murder, without any expert support at all, are clearly not admissible under the Federal Rules of Evidence.  Nor are any theories drafted up by Plaintiff's counsel, without any expert support.

**22.**     **Denial of Qualified Immunity At Summary Judgment and On Appeal**

Defendant requests the Court to exclude testimony or evidence that Kyle Wilson's qualified immunity argument was denied at summary judgment and on appeal. The Jury need not be aware that this Court denied Defendant's qualified immunity argument at summary judgment, as it would tend to make the jury believe that it is an invalid argument. Similarly, the jury should not be aware that the Defendant unsuccessfully appealed this matter to the Tenth Circuit Court of Appeals, and sought certiorari with the United States Supreme Court, as such knowledge would tend to make the jury further believe that it is an invalid argument. Whether either this Court, the Tenth Circuit, or the United States Supreme Court denied qualified immunity at summary judgment or on appeal, or refused to grant certiorari, is irrelevant to the issues currently before the jury. Fed. R. Evid. 401-403.

<u>**CONCLUSION**</u>

For the reasons set forth above, Defendant Wilson requests that the Court enter an Order in Limine to exclude from evidence at the trial of this case, any argument, evidence, questioning, suggestion, or innuendo related to the above-listed topics.

Respectfully submitted,

s/ Jordan L. Miller
Jordan L. Miller, OBA No. 30892
Stephen L. Geries, OBA No. 19101
COLLINS, ZORN & WAGNER, P.C.
429 N.E. 50th Street, 2nd Floor
Oklahoma City, OK 73105-1815
Telephone:     (405) 524-2070
Facsimile:     (405) 524-2078
Email: jlm@czwlaw.com
           slg@czwlaw.com

ATTORNEYS FOR DEFENDANT

18

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Joseph M. Norwood – via electronic mail at:
joe@oklahomaadvocate.com
Council Oak Center
1717 S. Cheyenne Ave. Tulsa, OK 74119

Thomas Mortensen - via electronic mail at: tmort70@hotmail.com
1331 S. Denver Avenue
Tulsa, OK 74119

*Attorneys for Plaintiffs*

s/ Jordan L. Miller
 Jordan L. Miller

19