Deposition of Richard Kyle Wilson 8/1/2016     Bridges, et al v. Wilson, et al 16-CV-126-GKF-PJC

1

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

(1) JANELLE BRIDGES, et al.,     )
                                 )
       Plaintiffs,               )
                                 )
vs.                              ) No. 15-CV-126-GKF-PJC
                                 )
(1) KYLE WILSON, in his          )
individual and official          )
capacity,                        )
(2) MIKE REED, in his            )
individual and official          )
capacity,                        )
(3) MAYES COUNTY,                )
                                 )
       Defendants.               )

       DEPOSITION OF RICHARD KYLE WILSON, a witness called on behalf of the Plaintiffs, on the 1st day of August, 2016, at 1 Court Plaza, commencing at 1:28 p.m., in the City of Pryor, County of Mayes, State of Oklahoma, before the undersigned, Marlene Percefull, a Certified Shorthand Reporter in and for the State of Oklahoma.

_____
Marlene Percefull, CSR

DAVIDSON REPORTING
CERTIFIED SHORTHAND REPORTERS
5508 South Lewis Avenue
Tulsa, OK 74105
Phone: (918) 745-9959
DavidsonReporting@cox.net

EXHIBIT 1

```
 1              (Whereupon, the deposition began at
 2       1:28 p.m.)
 3                  RICHARD KYLE WILSON,
 4       having first been duly sworn to testify to the
 5       truth, the whole truth and nothing but the truth,
 6       testified as follows:
 7                      DIRECT EXAMINATION
 8       BY MR. MORTENSEN:
 9   Q   Could you please state your name for the record?
10   A   Richard Kyle Wilson.
11   Q   Mr. Wilson, how do you like to be called; Deputy
12       Wilson, Mr. Wilson?
13   A   Kyle is fine.
14   Q   Okay, Kyle.  Hopefully, I won't get too many
15       objections calling you "Kyle" but, as you know, this
16       is a rather informal setting.  We're in a conference
17       room at the county courthouse.  A couple of people
18       are present, Joe Norwood with me.  Again, my name is
19       Thomas Mortensen.  I represent the Plaintiffs in
20       this case, the Bridges family, regarding an incident
21       involving the shooting death of Shane Bridges on New
22       Year's Eve; do you recall that event?
23   A   Yes, sir.
24   Q   Okay.  Have you ever given a deposition before?
25   A   No.
```

| | | |
|---|---|---|
| 1 | A | The — burnout, small town, wanted a change. I had |
| 2 | | become very busy with a side job that I was doing |
| 3 | | construction-wise. |
| 4 | Q | Okay. |
| 5 | A | So I started doing that full time. |
| 6 | Q | What kind of construction? |
| 7 | A | About anything, remodel work to building housing |
| 8 | | additions to excavation work. |
| 9 | Q | Okay. While at Langley Police Department, did you |
| 10 | | ever have an instance where you had to arrest |
| 11 | | somebody? |
| 12 | A | Yes. |
| 13 | Q | On how many occasions? |
| 14 | A | A lot. I have no idea. |
| 15 | Q | Okay. Had you ever had an occasion where you had to |
| 16 | | use force of any kind on an arrestee or anybody |
| 17 | | else? |
| 18 | A | I would say that "of any kind" would be every arrest |
| 19 | | made, most. |
| 20 | Q | Fair enough. Could you go through maybe several |
| 21 | | different levels of force that you would have to use |
| 22 | | during an arrest so that me and you could have kind |
| 23 | | of a common understanding of what we're talking |
| 24 | | about? |
| 25 | A | It could be as simple as having, when you handcuff |

1  somebody, you're touching them so, I mean, that's —
2  some people consider that a level of force.
3 Q Okay.
4 A Then, you know, having to take somebody down to the
5  ground that's not being cooperative.
6 Q Okay.
7 A I don't remember using any other force greater than
8  having to take somebody down to the ground —
9 Q Okay.
10 A — in my career.
11 Q Did you have stun guns there?
12 A Yes.
13 Q Did you ever use a stun gun on anybody, taser?
14 A Not there. I attempted to use my taser once. I was
15  one of the first ones in the State of Oklahoma to be
16  certified to use a taser. I was actually a taser
17  instructor.
18 Q Okay. Where at?
19 A Where at?
20 Q Taser instructor where?
21 A I actually received that training from Taser
22  International itself in Oklahoma City.
23 Q Okay. Was that before or after this shooting event?
24 A That was in the '99, 2000-ish, somewhere around
25  there.

1  Q  Okay.
2  A  It was before Tulsa, Oklahoma City, any of them had
3     tasers.
4  Q  Did you use a taser at Langley?
5  A  I carried a taser.
6  Q  Did you ever use one?
7  A  I pulled it out but I've never -- I don't recall
8     ever deploying, actually using it on a suspect.
9  Q  Okay. Did you have mace or pepper spray?
10 A  Yes.
11 Q  Have you ever used mace or pepper spray?
12 A  In the jail in Tulsa County.
13 Q  Okay. What about at Langley?
14 A  Unless it was on a dog or something, not on a
15    person. I don't recall ever using pepper spray on
16    anybody.
17 Q  Did you ever, at Langley, brandish your firearm and
18    point it at anybody?
19 A  Yes.
20 Q  Okay. On how many occasions?
21 A  I have no idea.
22 Q  More than ten or less than ten?
23 A  I have no idea. I don't know how to put a number on
24    that.
25 Q  Was that a common thing to brandish a firearm?

Case 4:15-cv-00126-GKF-JFJ   Document 218-1 Filed in USDC ND/OK on 05/29/19   Page 6 of 11

Deposition of RIchard Kyle Wilson 8/1/2016        Bridges, et al v. Wilson, et al 16-CV-126-GKF-PJC

90

```
 1    A    It would depend on the call.
 2    Q    Okay.  And when I say "brandishing a firearm," I
 3         want to make sure that we have a common definition
 4         here.  What do you consider "brandishing a firearm?"
 5    A    Either coming out with a long gun or taking it out
 6         of the holster.
 7    Q    Okay.  And why don't we go a step farther and let's
 8         say "brandishing" may be pulling it out and making
 9         it available, pointing it at somebody might be
10         something different?
11    A    Yes.
12    Q    So how many times do you think you brandished a
13         firearm and pointed it at an individual?
14    A    I have no idea.
15    Q    Okay.  Is that something that you would document as
16         a part of your duties at Langley Police Department?
17    A    No, if it did not escalate from there, no.
18    Q    Okay.  Is there a way for me to research the exact
19         number of times that you brandished a firearm and
20         pointed it at somebody?
21    A    No, I could not think of one.
22    Q    All right.  Would you say that you brandished and
23         pointed a firearm more than 100 times or less than
24         100 times?
25    A    I have no way of putting a number on it of any kind.
```

Deposition of Richard Kyle Wilson 8/1/2016        Bridges, et al v. Wilson, et al16-CV-126-GKF-PJC

91

```
 1    Q    Okay.  I know you don't have, and I'm not going to
 2         be exact with you, I just kind of want your best
 3         guess.  I'm not going to hold you to an exact number
 4         but best guess, more or less than 100 times?
 5    A    I would probably say less.
 6    Q    Okay.
 7    A    But that would be a guess.
 8    Q    Fair enough.  I'm not going to hold you to that.
 9         All right.  And when I say it on the record, I'll
10         say it in front of anybody, too.  I'm not going to
11         hold you to that number, all right, just get a fair
12         number.  Could you describe your -- a common
13         instance throughout these times that you did that
14         where you would brandish and point a firearm at
15         somebody?
16    A    Felony stops, building searches, searching looking
17         for a murder suspect, searching inside a building
18         for any high risk, you know, for serving search
19         warrants.
20    Q    Right.  And you happen to be in a building with a
21         gun drawn out and if somebody happened to step in
22         front of you that you're kind of pointing it at them
23         and although you didn't mean to point it at that
24         exact individual at that exact time, you were doing
25         that for your safety, right?
```

Deposition of RIchard Kyle Wilson 8/1/2016        Bridges, et al v. Wilson, et al16-CV-126-GKF-PJC

92

| | | |
|---|---|---|
| 1 | A | That's possible, right. |
| 2 | Q | Sweeping through a building and stuff like that? |
| 3 | A | (Nods head.) |
| 4 | Q | Felony car stops, sweeps of buildings, any other |
| 5 | | instances? |
| 6 | A | Not that I can think of off the top of my head, no. |
| 7 | Q | Okay.  At Langley Police Department, were there ever |
| 8 | | any citizen complaints filed or alleged against you? |
| 9 | A | Not that I know of. |
| 10 | Q | All right.  Throughout your time in your position as |
| 11 | | a law enforcement officer, has anybody filed a |
| 12 | | complaint or grievance or alleged that you acted |
| 13 | | inappropriately in any fashion? |
| 14 | | MR. GEE:  Object to the form. |
| 15 | A | I can only think of one. |
| 16 | BY MR. MORTENSEN: | |
| 17 | Q | And when was that? |
| 18 | A | Now that you say that.  A couple years ago maybe.  I |
| 19 | | don't know if he actually filed a complaint.  I know |
| 20 | | he called up to the sheriff's department and made a |
| 21 | | complaint. |
| 22 | Q | Okay.  And what sheriff's department? |
| 23 | A | Here. |
| 24 | Q | The Mayes County Sheriff's? |
| 25 | A | Yes. |

Marlene Percefull, CSR 122                              Davidson Reporting 918.745.9959

```
 1   Q    All right.
 2   A    But he also called and complained about everybody he
 3        had contact with in law enforcement.
 4   Q    That happens sometimes.  What was his specific
 5        complaint with you?
 6   A    Had to do with something about taking his children
 7        from him, which I actually didn't do.  DHS took his
 8        children from him, I was just there.
 9   Q    Okay.  Do you know how that complaint was resolved
10        with the Mayes County Sheriff's Office?
11   A    I mean, it was an unfounded complaint.  I remember
12        the sheriff asking me about it and I explained to
13        him what happened.
14   Q    Okay.  And that's a good subject to kind of broach
15        into.  If a complaint were to come into Mayes County
16        Sheriff's, who would typically respond to that
17        complaint, talk with the citizen and talk with you?
18   A    It would be one of the supervisors.
19   Q    Okay.  You said in this instance, the sheriff
20        actually had a discussion with you about it?
21   A    Yes.
22   Q    Was that typical?
23             MR. GEE:  Object to form.
24   A    That's the only one I can remember that I've ever
25        had so I don't know if it's typical or not.
```

Deposition of RIchard Kyle Wilson 8/1/2016          Bridges, et al v. Wilson, et al16-CV-126-GKF-PJC

134

BY MR. MORTENSEN:
Q   Okay. Would you still, to this day, call off backup?
         MR. GEE: Object to the form.
A   I would say "no," that if backup was coming, I wouldn't cancel backup until the situation was under control. I had already been there and the situation was under control and no longer needed them. At any rate, he never would have got there in time regardless because he didn't cancel, he kept coming.
BY MR. MORTENSEN:
Q   Have you ever been a party to any civil litigation before, whether that's a lawsuit or protective order or anything like that?
A   I've served a lot of protective orders but I haven't personally been, no.
Q   Any criminal cases, ever been arrested before?
A   Yes.
Q   For what?
A   A DWI that was dropped.
Q   Right. Could you tell the record about when that was and what county?
A   I was like 18, barely old enough to go to jail and it was here in Mayes County.
Q   All right. Is there a reason why you didn't list

Marlene Percefull, CSR 122                    Davidson Reporting 918.745.9959

Deposition of RIchard Kyle Wilson 8/1/2016        Bridges, et al v. Wilson, et al16-CV-126-GKF-PJC

135

| | | |
|---|---|---|
| 1 | | that on your CLEET application? |
| 2 | A | Because the charges were all dropped. |
| 3 | Q | Okay. But that was as a result of a probationary |
| 4 | | sentence, correct? |
| 5 | | MR. GEE: Object to the form. |
| 6 | A | No, I believe it was just dropped. |
| 7 | BY MR. MORTENSEN: | |
| 8 | Q | You didn't enter a plea in that case? |
| 9 | A | To my recollection, it was just all dropped. |
| 10 | Q | Was it dropped after you went to court or before you |
| 11 | | went to court? |
| 12 | A | I don't ever remember going to court for it. |
| 13 | Q | Did you have an attorney? |
| 14 | A | Yes. |
| 15 | Q | Who was that attorney? |
| 16 | A | Carl Longmire. |
| 17 | Q | And did he arrange some kind of deal for a reduced |
| 18 | | plea on that case? |
| 19 | A | To my best recollection, it was just dropped. I |
| 20 | | don't -- I don't know. |
| 21 | Q | Okay. Have you ever been suspended from any law |
| 22 | | enforcement position or reprimanded? |
| 23 | | MR. GEE: Object to form. |
| 24 | A | I don't believe I've ever been -- I don't recall |
| 25 | | ever being reprimanded. My certification was |

Marlene Percefull, CSR 122                    Davidson Reporting 918.745.9959